We'll call case 21-4039, Chilcoat v. San Juan County. And it looks like Ms. Porter, you're first. Yes, thank you. May it please the court and counsel Kara Porter and Anna Christiansen for plaintiff and appellate Rose Chilcoat. We're here appealing two orders from the San Juan County. And then the second is the denial of our motion to amend the complaint after that. I'm going to address those in that order unless the court asks me to jump ahead to something. As the court knows, judgment on the pleadings is assessed under the same standard as a motion to dismiss in terms of our factual allegation being assumed true. And I don't believe there's any dispute. The district I believe did assume that our allegations were true. The court simply concluded that it could still rule as a matter of law that what Mr. Laws is alleged to have done was nothing more than advocacy. And so one of the key issues that we are addressing with the court is what is the scope of advocacy? Our allegations are that Mr. Laws, who was earlier in the proceeding, he had engaged in advocacy, and it hadn't worked. He had shown the state court judge an email and said, look at this word, assault, accost, that's a falsehood, and the state court judge had disagreed. So at that point, in order to continue to seek a bind over, which is the equivalent of an indictment, in essence, in federal court, he then made just a bald faced factual misstatement and said, well, in essence, he said, I've got evidence. I believe he said that the evidence would be sufficient, but he did not point to any evidence and there had been no evidence adduced. So he then said, though, that the evidence would be sufficient that the photographs that were attached to that email had been embellished, changed, altered to that effect. Again, he was not pointing to anything that had been said in the preliminary hearing. He just said it. He just basically said, I've got this evidence. Isn't that what happens in a preliminary hearing? I mean, the court is trying to discern whether or not the defendant should be bound over. And in that discussion, the court is looking for whatever evidence either side presents to determine whether or not the defendant should be bound over. And so isn't counsel here, the county attorney here, trying to tell the court, this is the evidence I would rely on should this case go to trial. I don't believe that's exactly how the preliminary hearing process would work here in Utah, in that at the preliminary hearing, evidence does have to be adduced. And then you argue that what has been adduced is sufficient for a binder. Right, right, right. Correct. No different from what I've just described. Correct. Well, correct. Except you can't go in there with no evidence and say, trust me, I have evidence, you know, back in my office, because literally we- Well, did the prosecutor say anything under oath? Did he present a statement saying XYZ will happen and sign it under oath? Not under oath, your honor, but it's our position. And most of the time, the statements of a complaining witness are not made under oath. A typical example is a law enforcement officer who will make some kind of a statement in a police report for the purpose of getting charges filed. Those are not under oath, and yet that person is still a complaining witness. And we believe that the Kalina case and the other cases that we cited make it clear that even though we use the shorthand term, you know, witness, it does not literally require testimony under oath. But in the Kalina case, that's exactly what happened. Well, the prosecutor became an affiant. True, but the court's main- First of all, the court did indicate, though, in that case and in the other cases we cited, that it is not limited to literal testimony under oath. And the key distinction there in Kalina was simply that the was that the prosecutor there had performed a function that you did not have to be a prosecutor to perform. And this exact same thing is true here. In fact- So counsel, let me interrupt. So this just sounds like lawyer talk to me as opposed to witness talk. There's a, from the bench, it's suggested that you don't have enough for this. And the lawyer says, oh, but I'm going to put on evidence. I'm going to show with my evidence that this was, photographs were embellished and that the complaints that were made were embellished and this and that. It's not really factual testimony. At that point, it's the court's job, isn't it, to say, show me the evidence. And if they don't show the evidence, then they say, sorry, you don't have any evidence. So you're not going to bind the lady over for trial. I think- I mean, this is argument that's being made. It's argument as opposed to testimony. And I guess that's just where we differ in that what is being stated, which of course the party is quoted in their briefs, what's being stated is the equivalent of I have evidence. Now, granted, they're not showing it to the court, but it's a statement. I have evidence that is going to show this is what is being stated. In that context, that is a factual statement because Mr. Laws, as we have alleged in the complaint, not only did not have evidence, but he knew he didn't have evidence. And he had a particular reason to make the misstatement. So I think that's where- So, I mean, but the falsity of it doesn't really matter for this analysis, does it? I mean, assuming it is false, assuming he had no evidence, he was just making a blatantly false statement. If it's prosecutorial, there's still immunity. Well, except that this court has recognized that under our interpretation, the stating, making a statement that persuades a judge to bind over that I have something in my possession when I know I don't, it is a false statement, is more akin to making a false statement of being like a witness. It's not arguing something. It is very different. For example, if he said, I have a witness that said this or that, and but here, if you say I have a witness who says he saw Jim shoot John, and he has no such witness, he knows he doesn't have any such a witness. He's just saying that. It's no different in that context than what a law enforcement officer who is making the statements in order to obtain a prosecution. It's not a prosecutorial function. Remember, this is pre- the federal term would be to look at not only is this associated with a judicial proceeding, but also is this a uniquely prosecutorial function? No, I mean, according to Truman and common sense, it's not a prosecutorial function at all. Does it require- In Truman, there was a blatant misrepresentation of fact by a prosecutor. So there you have sort of the poster child of the prosecutor moving into investigator role and witness role. And do you see that analogy here? I do, with respect to someone essentially stating I have something that I don't have. I see that. I do- Doesn't that kick in exactly what Judge Carson is saying? That's when the district court usually will pipe up and say, show me the money. What have you got? Don't talk about it. I want to see it. Well, but we are still- Same thing could be true in a case with law enforcement or something. And the fact that a state court judge chose to believe the factual representation of the person speaking, though, I don't think deprives us of our ability to pursue it. Police officers aren't prosecutors. I mean, I don't think we can throw police officers and prosecutors into the same bag. Oh, I think that we can, though, in this context, because as the Supreme Court and this court in Mink said, it's an assessment based on the function. The fact that someone is elected as a prosecutor does not mean that everything that they do is now covered by prosecutorial immunity. You look at the function and the capacity. And in this case, we just allege that in this, he was serving more as, in essence, a witness or someone who was making a factual misrepresentation in order to obtain it. I would like- Ms. Porter, does your argument depend on us concluding that the absence of a sworn statement doesn't matter here? I mean, what are we to do with that piece of the applicable law? Well, I think that is one ground. If it doesn't have to be sworn, I think that then we have our argument should be allowed to proceed with our claim on complaining witness. But we also have the argument that just simply the alleged fabrication of evidence, in this case, it is the fabrication of a statement that is fabrication stating, I have something in my possession when I don't. That, I believe, is also an independent ground because that is not a prosecutorial function and doesn't require the exercise of prosecutorial judgment. So either way, I think we would prevail on that. And I'm going to very briefly talk about the amendment because I am going to try to reserve a little bit of time. But the denial of our amendment was based on the fact that we were speculating as to what happened in the secret meeting. And that is not hyperbole. The county commissioners had a meeting. They know that even if you're an executive session or it's a closed meeting, you have to record it. They turned off the recorder or they chose not to turn it on. And we only find out about it because we're taking a deposition of one of the participants who happens to blame our client for his federal criminal conviction. And we just simply asked for leave to take one day worth of depositions of the other participants in that meeting. Even the individual who testified about it in his the filing of the charges, or at least the felony charges, Ms. Chilcote was discussed, criminal things were discussed, and he admitted that Ms. Chilcote is widely known and controversial in the area. The two people who would be dealing with criminal matters, the sheriff and the prosecutor, were both in that literally secret meeting. Ms. Porter, does your amendment allege that Mr. Laws was in attendance at the meeting? It does. Where is that? I didn't see that. I will get that during. I would appreciate it. Thank you. Okay, thanks. And if I could reserve the rest of my time. Let me ask you one question first. So if your amendment, let's say you're wrong and your amendment doesn't allege that Laws was in the meeting, does that undo your position on amendment? Oh, no, I don't think so. Because I'm pretty sure that if it doesn't have that exact word in the amended complaint, it was discussed in the briefing and etc. And Mr. Laws, I believe we also mentioned with a citation to his deposition that Mr. Laws recalled being in a meeting. So I think there was... This amendment would be raised to continue a complaint against the county and or Laws or just the county? The primary focus on that is the county because it would have been a meeting of the entire commission. And the basis of the complaint, I guess, or claim that you would be making would be malicious prosecution? Yes, I mean the case law, we would continue with our... Well, yeah, because they would have encouraged the filing of criminal charges, which are later determined to all be without any merit. So yes. And if I could reserve time, and if I could ask for an additional minute, if the court would be all right with that. Let's see how the other argument goes. But you definitely have a minute too. All right. Thank you. Okay. All right. Mr. Hamilton. Thank you, Your Honor. May it please the court and counsel. Blake Hamilton on behalf of San Juan County and Mr. Laws. We believe that the district court did not did not err by determining that Mr. Laws was entitled to absolute immunity. And just some brief background or some just background about Mr. Laws. Mr. Laws is the county attorney for San Juan County. And as the county attorney, he prosecutes criminal matters on behalf of the state of Utah. And in this case, Mr. Laws was acting in his role as a prosecutor when he charged and prosecuted Ms. Chilcote on four counts. So he's a county employee or is he a state employee? At the time that he brings charges, he's a state actor because he's the elected county attorney with the authority to prosecute on behalf of the state of Utah. And paid by the county? Paid by the county? He's paid by the county. Yes. That's the way that the system is set up here in the state of Utah that county attorneys are elected and then they carry out the function of being the state prosecutor for that county. And in this situation, he brought charges four counts against Ms. Chilcote, trespassing on trust and false personal information to a peace officer, attempted wanton destruction of livestock, and retaliation against- We know those facts. The key thing here is whether or not he was acting as a prosecutor in his prosecutorial function or whether he was functioning as a complaining witness. We believe that it's very clear that he was acting as a prosecutor. The preliminary hearing, establishing where he's attempting to establish probable cause, the judicial notice was taken of that. You have that in the appendix. And the statement that really is at issue here really boils down to the following statement, which was where he answered a hypothetical question from the judge during the preliminary hearing, during argument, after evidence had been put on. And he said, quote, there would be sufficient evidence to show that some of the exhibits that Ms. Chilcote presented to the BLM with her letter were embellished or changed, altered to make those repairs look worse than they are. But at that point in the hearing, that statement made by the prosecutor was pivotal, wasn't it? I mean, the court had just said, okay, this is the case that you've alleged in your charges. And I'm not going to permit or see no weight in half of this or a good part of this. So the only thing that he really saw was the potential was this representation to the BLM. Well, the judge, the judge, no, the judge had already decided that he was going to bind over on count one and had and did bind over on count one trespassing on trust lands and count three attempted wanton destruction of livestock. The question was whether it was going to bind over on the false personal information of peace officer, which he ultimately did not. And then retaliation against a case witness victim or an informant because of the letter to the BLM. And so it's that last count, count four? Correct. So it's, it's that statement and that charge that was key to what the prosecutor was saying as regards the embellishment of the exhibit? Correct. That was the, the theory that had been advanced at that point was the, the, the term used about assault. And the judge said, well, the people have different versions of what assault means. And, and so I'm going to have to probably give an instruction. So if I was not going to allow you to proceed on that, you have a different theory. And that's when Mr. Laws made the argument. Yes, I have a different theory. And this is my theory that I would present. And again, at that point in time, the judge could have said, Hey, I want to see that evidence. It had been referred to He had talked about the, the letter to the BLM and the photographs that Ms. Chilcote has sent. And so the judge clearly could have asked at that point in time, Ms. Chilcote's attorney could have asked at that point in time, or Ms. Chilcote's attorney who was present during this could have said, no, we don't believe that those pictures actually are embellished or misleading. And, and here they are. And, you know, we don't believe that you should bind over. And Ms. Chilcote's attorney did not do that. They were present during that hearing. So we believe it's pretty clear here that Mr. Laws was acting as a prosecutor and should be given absolute immunity. And it's firmly established Supreme Court precedent that prosecutors while acting in the role as prosecutors are entitled to absolute immunity. Burns versus Reed, the Imbler case, Imbler versus Pachman, they both say that. And even if there is a false statement made by a prosecutor, they're still entitled to that absolute immunity because of the public policy reasons of wanting the state to be able to vigorously prosecute cases. And so we believe that controlling precedent is directly on point here. Ms. Chilcote is trying to put forward basically two arguments to get around that, the complaining witness and that of fabricating evidence. But we don't believe that that is the case here in Kalina versus Fletcher. Let me ask, let me drill down on something real fast. So I want to change it just slightly. And the judge says, I'm not sure I'm with you on this. Based on what you've presented so far, I just don't think I can bind Ms. Chilcote over on count four, whichever count it was. And Mr. Laws says in response, Your Honor, I've examined the letter and attachments to the BLM. And I can tell by looking at them that they are fabricated. And that supports binding her over. That's sufficient. Where are we if that's what he says? Well, he then would be more like a testifying or complaining witness at that point in time. But that's not what happened here. And there may be a stronger argument. But again, he was not sworn. And it is often the case in preliminary hearings here in the state of Utah, that prosecutors proffer evidence. And if they mistakenly proffer evidence, there's still safeguards in place. Eventually, they have to put on that evidence to be successful. And that's one of those safeguards. And in this case, Mr. Laws would have had to put on evidence to show that the pictures had been manipulated. What he meant by that was that he thought he had been told that the photographs themselves had been taken from different angles to make these ponds look larger than they are. And if you look at the dialogue between Mr. Laws and the judge, you can see that's in essence what he's trying to say there. He's talking about these ponds, these retention ponds, and whether they would be sufficient to provide adequate water to this cattle had been locked out of their pen or their gate, or corral, sorry, where this water had been placed by the rancher. So that was the discussion that was being had. So to answer your question, it may make it a more difficult case. But again, it would be more akin to a proffer of evidence. And again, I believe there still would be absolute immunity in that case, because there wasn't a rule of a prosecutor. And what about this? What about if his one of his witnesses had testified about the ponds and, and the pictures, and there wasn't enough water in here, I assume that the the argument about the, the just trying to destroy the cattle was being refuted with the water they could have gotten to. But what is so his his witness had testified as to Oh, no, there was not enough water to drink. You know, if you look at those pictures, you can tell there's really not enough. And what if he would have been said, but he said nothing about embellishment or anything. And he would have been said in his discussion with the judge, a judge, you heard, Judge briscoe's testimony, and she said that the pictures were embellished that they that they misrepresented the amount of water in those. Then that, would you agree that that sort of puts you on the other side of this statement? I mean, the maybe more clearly prosecutorial function side of the statement? He then would absolutely have been a prosecutor at that point, because he'd be making direct argument. But I, my position would be that, you know, prosecutors are allowed to do proper evidence. And if you look at I mean, if you look at the case, I think a sworn statement is important. Because if you look at the case that held that I'm specifically talking about the Kalina case, Kalina, there was three documents at play. There were two documents that were found not to be sworn statements, even though they were filed with probable cause statements in them, but they just were not sworn by the prosecutor. And ultimately, the Supreme Court said, there's absolute immunity with respect to those documents, the document that there is no absolute immunity to for the prosecutor is where she swore and attested that those facts were accurate, and made that sworn statement. And this also is a proceeding, this is a judicial proceeding. So as you look at the functions, and again, this court has held this before, in the past, when looking at these types of cases, there's certain factors to be looked at. And if you look at the factors here, one of them is that this is a judicial proceeding. And this clearly was a judicial proceeding. The second is whether the prosecutors being asked to use their professional judgment. I mean, clearly, Mr. Laws was asked being asked to use his professional judgment at this point in time, he's being asked a hypothetical question by the judge. And he's responding to that saying, here's my additional theory that I think I could move forward on. And before we get too far into this yet again, could you talk about the motion to amend? Sure. The motion to amend is pretty straightforward. With respect to the motion to amend, we don't believe the court erred when it denied the motion to amend. Ms. Chilcote's proposed amendment was futile. And that's what the judge doesn't it state a basically hit states a malicious prosecution claim. It states a malicious prosecution claim, except for the fact that it makes this speculative jump that the judge pointed out in the plea. The pleading itself, in essence, was that Ms. Chilcote believed that the deposition testimony of the former county commissioner show that the official policy to prosecutor was to retaliate against her for her environmentalism activism. And she in essence said, look, we know they had a closed door meeting or closed session meeting because he testified about that. And he testified that they were briefed on various criminal matters, including mine. And that was it. Those are the facts. But doesn't the chronology matter here, the chronology that she alleges in the amendment? What more does she need to say here to state a plausible municipal liability claim without she doesn't have access to the information? But she had deposed Mr. Lyman, the commissioner, and she could have got those facts out during that deposition or alleged some of the facts that she got out of the deposition to show that they had they were the ones that made the decision. So what are the facts that What are the facts that she could have alleged that that you would contend would be sufficient to to overcome futility here? The futility argument, as Judge Newford laid out in his decision, was the fact that she didn't put forward the facts. And I don't know exactly what Judge Newford would have required, but that she they made the decision. And so she would have pled something more there. And she did that. That's what Judge Newford found. And we believe he was right in that. He, in essence, just said that that leap was too far too speculative. And so I mean, at most, what she said was that the county commissioner knew about the incident. And ultimately, I mean, ultimately, again, though, it's the prosecutor who has the function under statute. Well, do we really do we really know how this went down? If he was at the meeting, and I think she alleged that he was, is that she has claimed that but I don't believe that that was actually in the amended complaint. Don't we have to accept that as true at this point? In a motion to amend? No, I'm saying I don't believe she put that in the amended complaint. I she said she was going to look at the amended complaint and be able to answer that question with her rebuttals. So let's just say he wasn't there. But let's say that the county commission was discussing criminal matters, including her case. And then lo and behold, very soon after that she is charged. She already established that bad blood between Mr. Lyman and this plaintiff. She had already been charged there was her charge was amended. That was all that was discussed. It was escalated. Her charge was was escalated. Well, there was Yes, there was a felony count brought besides the misdemeanor counts. That's correct. And I see at this point that I have my, my time is run. But again, we would ask this court affirm the decision of the district court both with respect to the motion on the judgment, pleadings, and the motion to amend the complaint. All right. Thank you, counsel. How much time do we have? I think she had a minute to actually when we called it. Okay. All right. Council. Go ahead. Thank you, Your Honor. I'm gonna since since we since we didn't go over time with your opposing counsel, I'm gonna I'm gonna hold you to it. Go ahead. Okay, then I will talk a little fast. What we did on this motion, we double checked and we informed the judge in our motion. This is appellate appendix 219. We stated that county attorney laws had previously testified to a meeting that included the sheriff. And then we stated that we could not determine at this juncture, in other words, without those depositions, whether he was also present during this closed meeting. We said the same thing in our reply in support of our motion to amend which we believe is appellate appendix 281. But the other people in that meeting should be able to answer that. But we also believe it wouldn't matter. The sheriff is in there and the sheriff can send a message, convey a message to a prosecutor even maybe easier than a commissioner can. And then I have 12 seconds left. I just want to say one thing. A lot of what we heard in this argument from counsel is not what is in the complaint. There was no hypothetical question that was answered. He didn't say I have a theory. He didn't say what I've been told is this. None of that is in the complaint. The complaint says he basically said I have evidence or there is evidence and he knew flat out he did not and there was not. And I do see the red light. And with that, I'll submit that and thank you, your honors. Thank you, counsel. Appreciate both of your good arguments today. The case will be submitted and counselor excused. Thank you.